BENNETT *v.* STATE OF INDIANA.

[No. 29,999. Filed October 20, 1961. Rehearing denied December 18, 1961.]

*Gilbert W. Butler,* of Martinsville, for appellant.

*Edwin K. Steers,* Attorney General, *Patrick D. Sullivan,* Deputy Attorney General, and *Richard Bray,* Prosecuting Attorney of Morgan County, for appellee.

ACHOR, J.—Appellant was charged by indictment with murder in the perpetration of a burglary under Acts 1941, ch. 148, §1, p. 447 [§10-3401, Burns' 1956 Repl.].[1] He was found guilty of murder in the first degree and sentenced to prison during life.

At the outset we are confronted by the fact that nowhere in his brief does appellant set forth the motion for new trial, or so much thereof as contains the asserted errors herein relied upon. Therefore, the errors which must be incorpo-

---

1. "Whoever purposely and with premeditated malice, or in the perpetration of or attempt to perpetrate a rape, arson, robbery, or burglary, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life." [§10-3401, Burns' 1956 Repl.]

rated within the motion are not properly presented to this court.[2] Furthermore, in oral argument our attention has been directed to the fact that this defect in briefing was called to the attention of the appellant in appellee's answer brief, but that appellant nevertheless made no effort thereafter to amend his brief so that it would conform with the above requirement of appellate practice. Because of this failure to properly prepare his brief, it must be considered that appellant has waived all issues which are dependent upon the omitted pleading. *Allison* v. *State* (1959), 239 Ind. 545, 157 N. E. 2d 193. See: I. L. E. *Appeals* §384 (1957).

However, because of the severity of the penalty imposed, this court has examined the argument presented in appellant's brief to determine whether or not there may have been a denial of substantial justice in the trial of this cause. In this connection we note that there is no contention made that any constitutional rights have been denied to appellant. Therefore, we limit our consideration to the question as to whether or not the verdict is sustained by the evidence, as argued in appellant's brief.

Appellant testified in his own defense, and in a large measure was proved guilty by his own testimony. According to appellant's testimony the burglary occurred on Tuesday morning, January 19, 1960, at about 3:00 or 4:00 o'clock. On Monday night (the 18th) George Whitesell had given him some rings to "hock," for which he received $8.50. They used the money to buy beer, which they drank while riding around with and visiting acquaintances—male and female. About midnight appellant went to the

2. *Grecco* v. *State* (1960), 240 Ind. 584, 592, 166 N. E. 2d 180, 167 N. E. 2d 714. Indiana Supreme Court Rule 2-17(f).

home of one Jack Stapert with whom he rode around drinking beer. He and Stapert decided to burglarize appellant's grandmother's house "to get some money and get some beer." Appellant had drunk "12, 13 or 14 beers." He "was drunk" and "didn't care." They decided they would go through a window. Appellant wore a pair of nylon gloves "to keep my fingerprints off." He took the screen out and went through the east window. Stapert had also started through the window when appellant's grandmother turned on the light and they both ran. She closed the window and turned out the light. They returned in ten or fifteen minutes. Appellant gave Stapert his jacket and re-entered through another window. The house was dark. As he entered the bedroom from the front room of the house his grandmother grabbed him by the left arm. Appellant "panicked." He "pushed" her and "hit her" "in the face" with a closed fist. She could not see him. She fell to the floor "pretty close to where they said she was" when they found her. He knelt down beside her and could hear her breathing heavy and felt her heart beating. Before leaving he looked in her purse for money. Later he discovered that there was blood on his shirt and gloves. In addition to this testimony Stapert testified that before breaking into the house the second time the defendant "said he was going in and he might have to hit his grandma and if he did he could kill her in one hit." (She was 74 years old, four feet ten inches tall and of slight build. Defendant was 20 years old and nearly six feet tall.)

The decedent's body was found the following Friday. Her face was covered with blood and there was a pool of blood on the floor and splotches of blood on the wall and furnishings. The house was cold and

the water pipes were frozen. A stack of magazines under the east window, from which appellant first entered, was scattered about the floor. The bed had been slept in. Decedent's purse was missing. According to the pathologist who performed an autopsy the decedent's nose and jaw were broken. Also several of the decedent's ribs on the left side were fractured. The cause of death was loss of function of both lungs which were filled with blood. The source of the blood was the mouth and nose. He estimated that death occurred from 20 minutes to 12 hours after the injury. At the time of the autopsy on the 22nd of January, the pathologist estimated that decedent had been dead "at least 24 hours and not more than four days." A more accurate estimate was not possible because of the freezing temperature for the preceding period and the lack of knowledge as to the temperature of the house during the time.

Throughout the trial appellant maintained he merely pushed the decedent once and struck her once and that these blows could not have inflicted the fatal injuries which decedent bore at the time of the autopsy. Also there were witnesses who testified that they saw decedent walking about the house alive on Wednesday. Appellant's counsel argues that in the light of this testimony the evidence was not sufficient to convict the appellant beyond a reasonable doubt. However, it is a fact that some of the witnesses who first said they saw the decedent on Wednesday later changed their story and it appeared from the testimony of others that they may have been in error. Furthermore, it was necessary that the jury consider the above testimony in the light of the interest of the witnesses in the case. Also, there was other testimony of the appellant, that he thought about having

someone call to see how she was but didn't do it and that he started back up there on Wednesday or Thursday but got scared and didn't go, although decedent could not have seen him at the time of the burglary.

The above evidence was sufficient to sustain the burden of proof imposed upon the state. *Breedlove* v. *State* (1956), 235 Ind. 429, 442-443, 134 N. E. 2d 226. We find no reason why, because of the justice of the case, the judgment should be reversed.

The judgment is therefore affirmed.

Landis, C. J., Arterburn, Bobbitt and Jackson, JJ., concur.

NOTE.—Reported in 177 N. E. 2d 454.